UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANDRE BAUGH,**<br>     **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  19-14275** |
| **VOYAGER INDEMNITY INSURANCE**<br>**COMPANY, ET AL.,**<br>     **Defendants** | **SECTION: "E" (3)** |

## ORDER AND REASONS

Before the Court is Defendant AmWins Access Insurance Services LLC's ("AmWins") Motion for Summary Judgment.[1]

## BACKGROUND

Eustis Insurance & Benefits ("Eustis"), a retail insurance agency, assisted Plaintiff Andre Baugh in securing insurance on his property located at 1310 Spain Street in New Orleans, Louisiana. AmWins, as the insurance broker, procured a Commercial Property Policy for Plaintiff from Voyager Indemnity Insurance ("Voyager") with an effective date of August 1, 2018, and a policy period of August 1, 2018 to August 1, 2019.[2] AmWins procured Plaintiff's Voyager policy in the name of Andre Bush, rather than Andre Baugh.[3] On February 5, 2019, Eustis requested that AmWins correct the insured's name.[4] On February 12, 2019, AmWins emailed an endorsement to Eustis with the name change, effective retroactively to August 1, 2018.[5]

---

[1] R. Doc. 78. Plaintiff opposed Defendant's Motion for Summary Judgment. R. Doc. 81.
[2] R. Doc. 78-14 at ¶ 1; R. Doc. 81-2 at ¶ 1.
[3] R. Doc. 78-14 at ¶ 2; R. Doc. 81-2 at ¶ 2.
[4] R. Doc. 78-3, Exhibit 2.
[5] R. Doc. 78-4, Exhibit 3.

Plaintiff alleges damages to his property from a windstorm on July 10, 2019. On August 29, 2019, Plaintiff's representative reported the claim to Assurant Specialty Property ("Assurant"), Voyager's claims administrator.[6] On September 3, 2019, AmWins emailed Assurant a copy of the Voyager policy, attaching a copy of the endorsement reflecting the February 2019 name change to Andre Baugh.[7] That same day, AmWins emailed Assurant and corrected Plaintiff's covered address to 1310 Spain Street.[8] On September 5, 2019, after a series of emails between the parties, Assurant confirmed that 1310 Spain Street was a covered location on Plaintiff's Voyager policy and the claim was accepted.[9] Plaintiff contends the confusion around the name of the insured and the location of the covered property resulted in a delay in Voyager accepting Plaintiff's claim, which in turn resulted in a deterioration of the condition of Plaintiff's property during the delay.[10]

On October 19, 2019, Plaintiff filed suit against Voyager for breach of contract and bad faith failure to pay sums due under the Voyager policy and against AmWins for taking out the Voyager policy in the wrong name causing delay.[11] Plaintiff's Second Supplemental and Amended Petition for Damages,[12] filed in response to AmWins' motion to dismiss,[13] alleges AmWins breached its duty to procure and provide Plaintiff with a correct policy of insurance by incorrectly naming Plaintiff as Andre Bush in the original policy, thereby causing delay in the acceptance of Plaintiff's claim, resulting in further deterioration of

---

[6] R. Doc. 78-14 at ¶ 3; R. Doc. 81-2 at ¶ 3.
[7] R. Doc. 78-14 at ¶ 4; R. Doc. 81-2 at ¶ 4.
[8] R. Doc. 78-6, Exhibit 5; R. Doc. 78-8, Exhibit 7.
[9] R. Doc. 78-14 at ¶ 8; R. Doc. 81-2 at ¶ 8.
[10] R. Doc. 43.
[11] R. Doc. 1.
[12] R. Doc. 43.
[13] R. Doc. 8.

Plaintiff's property.[14] AmWins filed the instant Motion for Summary Judgment seeking to be absolved of liability for negligence as a matter of law.[15]

### STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] "An issue is material if its resolution could affect the outcome of the action."[17] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[18] All reasonable inferences are drawn in favor of the nonmoving party.[19] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[20]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[21] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the

---

[14] R. Doc. 43; R. Doc. 81-2 at ¶ 9.
[15] R. Doc. 78.
[16] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[17] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[18] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[19] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[20] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[21] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[22]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[23] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[24] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[25] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[26] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must

---

[22] *Celotex*, 477 U.S. at 322–24.
[23] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[24] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[25] *Celotex*, 477 U.S. at 332–33.
[26] *Id.*

material facts are not disputed."[34] Louisiana courts have made clear that summary

judgment should not be granted on particular elements of a negligence claim, because,

"by dividing the issue of liability into smaller issues. . . . [t]here is a possibility of confusion

arising out of the factual interrelationship between the adjudicated element and the

unadjudicated element that could lead to inconsistent rulings and piecemeal litigation."[35]

In other words, summary judgment "may not be granted for purposes of determining a

particular element of liability where such a determination is not completely dispositive of

the question of liability between the parties concerning the claim and where other issues

such as comparative fault remain unresolved."[36]

The Fifth Circuit noted the difficulties in granting summary judgment in

negligence cases because the reasonableness of the conduct is at issue:

> Because of the peculiarly elusive nature of the term "negligence" and the necessity
> that the trier of facts pass upon the reasonableness of the conduct in all the
> circumstances in determining whether it constitutes negligence, it is the rare
> personal injury case which can be disposed of by summary judgement, even where
> the historical facts are concededly undisputed.[37]

Thus, a federal court applying Louisiana law will grant summary judgment in a negligence

case only in "rare circumstances."[38] "Summary judgment is ordinarily (but not always)

inappropriate when the issue involves negligence or contributory negligence."[39] "'It is

---

[34] *Davidson v. Stanadyne, Inc.*, 718 F.2d 1334, 1338–39 (5th Cir. 1983) (citing *Marsden v. Patane*, 380 F.2d 489, 491 (5th Cir. 1967); *Gross v. Southern Railway Co.*, 414 F.2d 292, 296 (5th Cir.1969); *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir.1970); *King v. Avtech Aviation, Inc.*, 655 F.2d 77, 78 (5th Cir. 1981); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2729 at 195 (1983)).
[35] *Jones v. LSU Health Sciences Center-Shreveport*, 880 So. 2d 269, 270 (La. App. 2 Cir. Sept. 2, 2004).
[36] *Williams v. City of New Orleans*, 637 So. 2d 1130, 1132 (La. App. May 17, 1994), *writ denied*, 644 So. 2d 632 (La. Oct. 7, 1994).
[37] *Gauk v. Meleski*, 346 F.2d 433, 437 (5th Cir. 1965).
[38] *Davidson*, 718 F.2d at 1339 & n.8 ("In tort actions in which determinations of a less "elusive nature," such as the existence of an agency relationship, waiver, or whether a plaintiff is in a class protected by a statute, are dispositive, summary judgment may more often be appropriate." (citing 10A Wright, § 2729 at 197–201)); *see also Keating v. Jones Development of Mo., Inc.*, 398 F.2d 1011, 1015 (5th Cir. 1968) ("Negligence is a seldom enclave for trial judge finality. Negligence is a composite of the experiences of the average man and is thus usually confined to jury evaluation.").
[39] *Matthews v. Ashland Chem.*, 703 F.2d 921, 925 (5th Cir. 1983).

usually for the jury to decide whether the conduct in question meets the reasonable man standard.'"[40] This especially true if the element at issue is causation, as a court should "decide the issue of causation on summary judgment [only] if the allegation is so frivolous and obviously impossible as to fall short of presenting a genuine issue of material fact."[41]

AmWins seeks summary judgment that "(1) the alleged "name issue" caused no delay in Voyager's claims handling, such that Plaintiff cannot present admissible evidence of the elements of breach of the standard of care, cause-in-fact, legal cause, or actual damages for a negligence claim; and (2) AmWINS' purported improper instruction for Voyager to close its file occurred on September 5, 2019, the same day that Voyager accepted the claim—such that Plaintiff cannot present admissible evidence that the condition of the property deteriorated as alleged in the Petition."[42] It appears AmWins is seeking summary judgment that it committed no negligence because Plaintiff will not be able to prove its actions caused delay or that any delay resulted in deterioration of the property.

Both Plaintiff and AmWins agree AmWins took out the policy under the name of Andre Bush.[43] Both parties further agree AmWins corrected the name in the policy in February 2019, prior to Plaintiff's claim.[44] It is undisputed that the Loss Notice incorrectly named the claimant as Andre Bush and incorrectly listed the covered address as 7210 Arbor Drive.[45] Plaintiff and AmWins dispute who reported the claim to Assurant, whether the information that person conveyed was correct, and whether the cause of any delay was

---

[40] *Id.* (quoting 10 WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE, § 2729 (2d ed. 1983)).
[41] *Tidewater Marine, Inc. v. Sanco Intern., Inc.,* 1997 WL 543108 at *5 (E.D. La. Sept. 3, 1997) (quoting *Del Valle v. Marine Transp. Lines, Inc.,* 582 F. Supp. 573, 578 (D.P.R. 1984), and citing *Bonmarito v. Pendrod Drilling Corp.,* 929 F.2d 186, 188 (5th Cir. 1991)).
[42] R. Doc. 78.
[43] R. Doc. 78-14 at ¶ 2; R. Doc. 81-2 at ¶ 2.
[44] R. Doc. 78-14 at ¶ 2; R. Doc. 81-2 at ¶ 2.; R. Doc. 78-3, Exhibit 2.
[45] R. Doc. 78-5, Exhibit 4. Loss Notice reflects date reported was August 29, 2019.

(1) an incorrect claim report or (2) AmWins' original mistake regarding the insured's name.[46]

Plaintiff asserts the claim was reported by Catherine Miller, an employee of Plaintiff's attorney Galen Hair. Plaintiff points to Miller's affidavit in which she stated she reported the claim and she specifically remembers reporting the correct name and address.[47] In her affidavit, Miller states, "she reported a claim to Voyager Indemnity Insurance Company by phone for then SVHC client Andre Baugh."[48] Further, she states she "specifically recalls indicating that the claim was for "Andre Baugh,"[49] and "specifically indicating that the claim was for Mr. Baugh's property at 1310 Spain Street, New Orleans, Louisiana."[50]

AmWins asserts the claim was reported by Hair, Plaintiff's attorney.[51] AmWins contends Hair's incorrect report of the claim, rather than AmWins initial error as to the insured's name, was the source of any delay or damages.[52] As evidence that Plaintiff's representative provided incorrect information, AmWins offers the Loss Notice. It is not clear to the Court who prepared the Loss Notice.[53] Neither Plaintiff nor AmWins included this information in its statement of uncontested material facts.[54] AmWins argues the inclusion of the wrong name and address in the Loss Report[55] is circumstantial evidence that Assurant was provided the wrong name and address at the time the claim was reported. AmWins provides a contemporaneous email chain between AmWins'

---

[46] R. Doc. 78-14 at ¶ 3; R. Doc. 81-2 at ¶ 3. *See also* R. Doc. 81-1, Affidavit of Catherine Miller.
[47] R. Doc. 81-1.
[48] *Id.* at ¶ 4.
[49] *Id.* at ¶ 5.
[50] *Id.* at ¶ 6.
[51] R. Doc. 78-14 at ¶ 3.
[52] R. Doc. 81-2 at ¶ 3.
[53] R. Doc. 78-5. Producer on Loss Notice is blank.
[54] R. Doc. 78-14; R. Doc. 81-2.
[55] R. Doc. 78-5, Exhibit 5.

employees that states the retailer, Eustis, called and "[t]he insured reported the claim to the wrong company with the wrong location. This location is his personal address and should have been reported to his personal lines policy."[56] AmWins argues this email is additional circumstantial evidence that Plaintiff's representative incorrectly reported Plaintiff's claim. AmWins points to another email in response to Assurant's report, noting "there must be some confusion about the location of the claim,"[57] and an email from Eustis to Assurant correcting Plaintiff's name and clarifying the address of the covered property is 1310 Spain Street.[58]

There are material facts in dispute as to who reported the loss, whether the information conveyed by that person was correct, who prepared the Loss Notice, and who is responsible for the incorrect information in the Loss Notice. As a result, a factual dispute exists regarding what was the cause of any delay—an incorrect claim report or AmWins' initial mistake in naming Andre Bush as the insured.[59]

AmWins' motion for summary judgment also asks for summary judgment that its instruction to Voyager to close the file did not cause any deterioration in the condition of Plaintiff's property. AmWins points out that its instruction to Voyager to close the file occurred on September 5, 2019, the same day Voyager accepted the claim. AmWins statement of uncontested material facts does include a statement that the instruction to close the file occurred on September 5, 2019 and that the claim was accepted that same day.[60] Plaintiff admits AmWins' directive to close the file occurred on September 5,

---

[56] R. Doc. 78-9, Exhibit 8.
[57] R. Doc. 78-11, Exhibit 10.
[58] R. Doc. 78-12, Exhibit 11.
[59] *Id.*
[60] R. Doc. 78-14 ¶¶ 6, 8.

2019,[61] and that the claim was accepted on September 5, 2019.[62] Nevertheless, Plaintiff argues AmWins original mistake in listing the wrong name on the policy caused Andre Bush to be listed on the Loss Notice, which was the cause of the delay from August 29 through September 5, 2019 and the resulting deterioration in the property, rather than AmWins' directive to close the file. Material facts are in dispute with respect to this basis for summary judgment, as well. As explained above, summary judgment is rarely granted in negligence cases, especially when causation is at issue. The Plaintiff's allegation that AmWins' actions caused delay and resulting deterioration to Plaintiff's property is not so frivolous and obviously impossible as to fall short of presenting a genuine issue of material fact.

**CONCLUSION**

**IT IS ORDERED** that Defendant AmWins Access Insurance Services, LLC's Motion for Summary Judgment[63] is **DENIED**.

New Orleans, Louisiana, this 2nd day of November, 2020.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[61] R. Doc. 81-2 at ¶ 6.
[62] R. Doc. 81-2 at ¶ 8.
[63] R. Doc. 78.